IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ALMONDNET, INC. and INTENT IQ, LLC, and DATONICS LLC, | |
| Plaintiffs, | C.A. No. 24-00831-MN |
| v. | **JURY TRIAL DEMANDED** |
| LIVEINTENT, INC., | |
| Defendant. | |

## OPENING BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

Dated: December 17, 2024

Susan E. Morrison (No. 4690)
Grayson P. Sundermeir (No. 6517)
FISH & RICHARDSON P.C.
222 Delaware Avenue, 17th Floor
Wilmington, DE 19899-1114
(302) 652-5070
morrison@fr.com
sundermeir@fr.com

Aamir A. Kazi
(GA Bar No. 104235)
1180 Peachtree Street, NE, 21st Floor
Atlanta, GA 30309
(404) 892-5005
kazi@fr.com

*Attorneys for Defendant*
*LIVEINTENT, INC.*

**TABLE OF CONTENTS**

I. INTRODUCTION ..................................................................................................................1

II. NATURE AND STAGE OF THE PROCEEDINGS .........................................................2

III. SUMMARY OF ARGUMENT ............................................................................................3

IV. STATEMENT OF FACTS ..................................................................................................4

    A. AlmondNet Does Not Identify a Product it Alleges Satisfies the '146 Patent Claims ........................................................................................................................5

    B. AlmondNet Relies on Third Parties to Satisfy the '146 Patent Claims ...................5

    C. AlmondNet's Infringement Allegations for the '445 Patent Rely on Actions of Third Parties .............................................................................................................6

        1. AlmondNet Alleges LiveIntent's Advertisers Satisfy Part of Step 1[a] ......6

        2. AlmondNet Alleges Oracle Performs Part of 1[b] ......................................8

    D. AlmondNet's Pre-Suit Indirect Infringement Allegations For the '398 Patent and Are Boilerplate ..........................................................................................................8

V. ARGUMENT ........................................................................................................................9

    A. Legal Standards ........................................................................................................9

    B. AlmondNet Failed to State a Claim of Infringement of the '146 Patent Because It Does Not Identify a Specific Accused Product ......................................................10

    C. AlmondNet Failed to State a Claim of Infringement of the '146 or '445 Patent Because It Refers to Actions of Third Parties .......................................................11

    D. AlmondNet's Indirect Infringement Allegations Should be Dismissed ................12

VI. CONCLUSION ...................................................................................................................14

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*10x Genomics, Inc. v. Celsee, Inc.*,
 No. 19-0862-CFC-SRF, 2019 WL 5595666 (D. Del. Oct. 30, 2019)................................10, 11

*Alarm.com, Inc. v. SecureNet Techs. LLC*,
 345 F. Supp. 3d 544 (D. Del. 2018).........................................................................................13

*Align Tech., Inc. v. 3Shape A/S*,
 339 F. Supp. 3d 435 (D. Del. 2018).........................................................................................10

*Arunachalam v. Apple, Inc.*,
 806 F. App'x 977 (Fed. Cir. 2020) ..........................................................................................11

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009)...............................................................................................................9, 14

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007)...................................................................................................................9

*Bonutti Skeletal Innovations LLC v. Conformis, Inc.*,
 No. CV 12-1109-GMS, 2013 WL 6040377 (D. Del. Nov. 14, 2013) .....................................10

*Boston Sci. Corp. v. Nevro Corp.*,
 415 F. Supp. 3d 482 (D. Del. 2019)...........................................................................................9

*CAP Co. v. McAfee, Inc.*,
 No. 14-5068-JD, 2015 WL 4734951 (N.D. Cal. Aug. 10, 2015) ............................................10

*Commil USA, LLC v. Cisco Sys., Inc.*,
 575 U.S. 632 (2015).............................................................................................................10, 13

*Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*,
 424 F.3d 1293 (Fed. Cir. 2005)................................................................................................10

*Global-Tech Appliances, Inc. v. SEB S.A.*,
 563 U.S. 754 (2011).................................................................................................................10

*MONEC Holding AG v. Motorola Mobility, Inc.*,
 897 F. Supp. 2d 225 (D. Del. 2012).........................................................................................13

*Shire ViroPharma Inc. v. CSL Behring LLC*,
 No. 17-414-MSG, 2019 WL 3546692 (D. Del. Aug. 5, 2019)................................................10

*SIPCO, LLC v. Streetline, Inc.*,
   230 F. Supp. 3d 351 (D. Del. 2017).......................................................................................9

*ZapFraud, Inc. v. Barracuda Networks, Inc.*,
   528 F. Supp. 3d 247 (D. Del. 2021).....................................................................................13

**Statutes**

35 U.S.C. § 271(b) ........................................................................................................................10

## I.  INTRODUCTION

AlmondNet's Amended Complaint fails to fix the defects in its Original Complaint. AlmondNet originally asserted method claims from four patents against LiveIntent.  To satisfy its pleading requirement, AlmondNet was required to plead facts demonstrating LiveIntent performed all steps of the asserted claims.  Although AlmondNet's allegations for each of the four patents lack merit, its allegations for two of the four ('146 and '445 patents) were particularly deficient because they did not identify a specific LiveIntent accused product or actor. AlmondNet's allegations in its Original Complaint for the '146 patent identified third parties DV360, Media Math, The Trade Desk, Verizon Media, and Xandr as performing certain functionality.  And AlmondNet's allegations for the '445 patent referred to acts performed by "advertisers" and separate acts performed by Oracle.  In addition, AlmondNet's broadly worded indirect infringement allegations did not disclose any viable theory.

LiveIntent moved to dismiss AlmondNet's claims of indirect infringement and direct infringement as to the '146 and '445 patents in the Original Complaint.  AlmondNet did not respond LiveIntent's motion, but instead filed an Amended Complaint.  With respect to the '146 patent, AlmondNet did not change its allegations, and the Amended Complaint accused the same third-party functionality.  AlmondNet merely removed the express reference to DV360, Media Math, The Trade Desk, Verizon Media, and Xandr.  AlmondNet similarly modified its claim chart for the '445 Patent so that it no longer expressly refers to actions by "advertisers," but its infringement theory for that patent also did not change.  And AlmondNet continues to rely upon actions by "Oracle."

Finally, in an attempt to sustain a claim of indirect infringement, AlmondNet claims the filing of the Original Complaint establishes LiveIntent's pre-suit knowledge of the Asserted Patents.  But the filing of the Original Complaint does not create knowledge where none existed

before. As such, the Amended Complaint fails to state a claim of infringement as to the '146 and '445 patent, and also presuit indirect infringement, and LiveIntent asks the court to dismiss these claims.

## II.   NATURE AND STAGE OF THE PROCEEDINGS

AlmondNet filed its Original Complaint against LiveIntent on July 18, 2024. (D.I. 1.) The Original Complaint accuses LiveIntent of directly infringing U.S. Pat. Nos. 8,677,398 (the "'398 patent"), 8,959,146 (the "'146 patent"), 10,984,445 (the "'445 patent"), and 8,494,904 (the "'904 patent") (collectively, the "Asserted Patents"). (*Id*.) The Original Complaint alleged LiveIntent was liable for inducement and contributory infringement of the '398 patent, but generically alleged "infringement" of the '146 patent, the '445 patent, and the '904 patent. (*Compare Id*. at ¶ 14 to *id*. at ¶¶ 24, 32, 41.) AlmondNet's allegations as to the '146 and '445 patents relied on actions of third parties—and therefore, LiveIntent moved to dismiss those allegations of direct infringement (which would require showing LiveIntent performed the claimed methods). (D.I. 10) ("MTD"). LiveIntent also moved to dismiss AlmondNet's indirect infringement allegations. *Id.*

Rather than respond to the MTD, AlmondNet filed an Amended Complaint. (D.I. 13). In its Amended Complaint, AlmondNet limited its indirect infringement allegations only as to the '398 patent and removed express references to third party actors in its allegations on the '146 and '445 patents. However, AlmondNet did not change the nature of its infringement allegations, relying largely on the same evidence and pointing to the same actions—including that which it had previously attributed to third parties. LiveIntent therefore brings this Motion to Dismiss AlmondNet's Amended Complaint ("Motion").

### III.      SUMMARY OF ARGUMENT

1. AlmondNet's claims of infringement concerning the '146 patent are deficient and should be dismissed. AlmondNet does not allege a single product satisfies all claim limitations, instead referring to different products throughout its allegations. And while AlmondNet modified the allegations from its Original Complaint, AlmondNet continues to rely on the actions of third parties to establish elements of the claims, such as the requirement for correlating advertisements. As LiveIntent cannot be held directly liable for the actions of third parties, and AlmondNet does not assert indirect infringement, the claims regarding the '146 patent must be dismissed.

2. AlmondNet's direct infringement claims regarding the '445 patent similarly rely on the actions of third parties. LiveIntent's MTD identified as one example that AlmondNet's infringement theory relied on third party advertisers and publishers allegedly requesting profile information to satisfy a limitation concerning the "request[ing]" of data. AlmondNet removed the explicit reference to advertisers and publishers in its infringement allegations, but still pleads the same facts in support of its theory. AlmondNet also continues to rely on actions performed by Oracle for another limitation. Thus, AlmondNet cannot establish LiveIntent performs all steps of the asserted method claims, and those claims should be dismissed.

3. AlmondNet's pre-suit indirect infringement allegations should also be dismissed. The Amended Complaint clarifies that AlmondNet's only indirect infringement allegations are for the '398 patent, but AlmondNet does not allege LiveIntent was aware of that patent before the lawsuit was filed.

IV.     **STATEMENT OF FACTS**

This case is one of a series AlmondNet has filed in this Court against a variety of defendants.[1] In the instant case, AlmondNet sued LiveIntent, a digital marketing company, incorporated in Delaware with a principal place of business in New York, New York. AlmondNet alleges LiveIntent's "Accused Instrumentalities" infringe the Asserted Patents. (D.I. 13 at ¶¶ 12, 23, 31, 40.) Rather than identify a specific accused product for each patent, the Amended Complaint uses open-ended language to identify multiple LiveIntent offerings that collectively are referred to as the "Accused Instrumentalities":

> Defendant also knowingly and intentionally induces infringement of at least method claim 13 of the '398 patent in violation of 35 U.S.C. § 271(b) by providing LiveIntent's People-Based Marketing Platform including but not limited to components such as the LiveIntent Identity Graph, Identity Module, HIRO, UID2.0, nonID, and Authenticated Bridge services (collectively, "the Accused Instrumentalities")[.]

*Id.* ¶ 14; *see also id.* at ¶ 12; *id.* at ¶ 25 (similar); *id.* at ¶ 33 (similar); *id.* at 42 (similar).

AlmondNet provides a claim chart for each patent that purports to substantiate the allegations in the Amended Complaint. But the claim charts include screenshots of various LiveIntent products with little explanation, providing no further notice to LiveIntent. AlmondNet's infringement allegations for the '146 patent and '445 patent are particularly deficient because the charts additionally refer to actions by third parties.

---

[1] *See, e.g.*, *AlmondNet, Inv. v. Lotame Solutions, Inc.*, No. 24-0375-MN, D.I. 1 (D. Del. Mar. 22, 2024); *AlmondNet, Inc. v. LinkedIn Corp.*, No. 23-1373-MN, D.I. 1 (D. Del. Dec. 1, 2023); *AlmondNet, Inc. v. Freewheel Media, Inc.*, No. 23-0220-MN, D.I. 1 (D. Del. Mar. 1, 2023); *AlmondNet, Inc. v. Viant Tech. Inc.*, No 23-0174-MN, D.I. 1 (D. Del. Feb. 16, 2023); *AlmondNet, Inc. v. Oath Holdings, Inc.*, No. 18-943-RGA, D.I. 1 (D. Del. June 26, 2018); *AlmondNet, Inc. v. Oath Holdings, Inc.*, No. 19-247-LPS, D.I. 1 (D. Del. Mar. 30, 2016); *AlmondNet, Inc. v. Viant Tech. Inc.*, No 23-0174-MN, D.I. 1 (D. Del. Feb. 16, 2023); *AlmondNet, Inc. v. Oath Holdings, Inc.*, No. 18-943-RGA, D.I. 1 (D. Del. June 26, 2018); *AlmondNet, Inc. v. Oath Holdings, Inc.*, No. 19-247-LPS, D.I. 1 (D. Del. Mar. 30, 2016).

### A.     AlmondNet Does Not Identify a Product it Alleges Satisfies the '146 Patent Claims

AlmondNet's allegations for the '146 patent refer to several different products by name and quote different aspects of LiveIntent's product literature, but never identify which product allegedly performs the asserted method claims of the '146 patent.

The product identification is contradictory, as AlmondNet identifies some products for some limitations and other products for other limitations, making it impossible to determine what is the actual accused product that satisfies the claim.  For the preamble, which recites "[a] method of directing electronic advertisements, performed by a computer system comprised of one or more computers," AlmondNet refers to LiveIntent's DSP, IdentityGraph and DynamicAudience products.  (D.I. 13, Ex. 4 at 1–3.)  There is no explanation as to why AlmondNet identifies these products, or whether AlmondNet contends these products satisfy the preamble individually, collectively, or otherwise.  Then, for the next limitation ("for each of a multitude of different electronic visitors . . ."), AlmondNet does not identify IdentityGraph or Dynamic Audiences and instead cites "the LiveIntent DSP."  (*Id.* at 3–16.)  The third limitation ("(b) wherein directing the indicia . . .") again includes IdentityGraph and Dynamic Audiences, but then confusingly (1) refers to AlmondNet's claim chart for the '398 patent; and (2) cites to "evidence for claim limitations 37(a)-37(b) above", which do not exist in the chart for the '146 Patent (or any other chart, as best as can be determined).  (*Id.* at 16–20.)

### B.     AlmondNet Relies on Third Parties to Satisfy the '146 Patent Claims

AlmondNet's infringement theory for the '146 patent also requires actions to be performed by third parties.  AlmondNet contends the "(c) wherein the advertisement . . ." limitation is satisfied because "the advertisement is correlated with the indicated profile attribute or attributes."  (*Id.* at 20.)   AlmondNet alleges this correlation is satisfied by targeted advertisements—which

AlmondNet attributes to actions collectively performed by LiveIntent "and its advertising partners." (*Id.* ("For example, LiveIntent *and its advertising partners* target the advertisement directed to the visitor to the second website based on profile data collected as a result of the visitor visiting the first media property, such that the resulting advertisement is correlated with the profile attributes.") (emphasis added).)

### C. AlmondNet's Infringement Allegations for the '445 Patent Rely on Actions of Third Parties

AlmondNet alleges LiveIntent infringes the method of claim 1, which has multiple steps, including step (a) and step (b). For each of these steps, to allege infringement, AlmondNet relies upon a combination of functionality provided by LiveIntent *and* functionality provided by LiveIntent partners, such as communications initiated by advertisers and configurations of computers by third party data providers such as Oracle.

#### 1. AlmondNet Alleges LiveIntent's Advertisers Satisfy Part of Step 1[a]

Step 1[a] requires "a computer system" that, among other things, is used to store profile information communicated to it:

> (a) ***with a computer system automatically storing***, in a central database associated with the computer system, ***profile information associated with a visitor***, as a result of electronic receipt from a profile owner computer of indicia of the profile information, ***which profile information associated with the visitor matches a profile or kind of profiles requested by an entity controlling the computer system,*** wherein a tag associated with a visitor device serves as a link to the profile information associated with the visitor;

(*See* D.I. 13, Ex. 5, cl. 1 (emphasis added).)

Although 1[a] is confusing, one requirement is the entity controlling the "computer system" requests profile information. *See id.* at cl.1(a) ("which profile information associated with the visitor matches a profile or kind of profiles ***requested by an entity controlling the computer system*** . . . .") (emphasis added). AlmondNet originally asserted this "request" was

6

satisfied by third party advertisers and publishers that coordinated with LiveIntent. (*See* D.I. 1, Ex. 6 at 1 ("As a result of receiving this profile information, which matches a kind of profile requested by LiveIntent (e.g., in coordination with an advertiser / publisher), LiveIntent's Accused Instrumentalities automatically store the profile information associated with a visitor in a central database[.]"). In support of this allegation, AlmondNet cited documents demonstrating LiveIntent's third party partners (not LiveIntent) performed the claimed "request[ing]" by communicating data. (*See id.* at 1 (providing information on how advertisers may, if desired, "send[] your first party data to LiveIntent."))

After LiveIntent's Motion to Dismiss, AlmondNet modified its claim chart to remove reference to the "advertiser" and "publisher." (*Compare* D.I. 13, Ex. 6 at 1 ("As a result of receiving this profile information, which matches a kind of profile requested by LiveIntent, ***LiveIntent (using its Accused Instrumentalities)*** automatically stores the profile information associated with a visitor in a central database[.]") (emphasis added)*; with* D.I. 1, Ex. 6 at 1 ("As a result of receiving this profile information, which matches a kind of profile ***requested by LiveIntent (e.g., in coordination with an advertiser / publisher),*** LiveIntent's Accused Instrumentalities automatically store the profile information associated with a visitor in a central database[.]"). Regardless of AlmondNet's removal of the reference to an advertiser or publisher, AlmondNet still pleads the same facts. (*Compare* D.I. 13, Ex. 6 at 1-9; *with* D.I. 1, Ex. 6 at 1-9.) Thus, although AlmondNet's self-serving characterizations have changed, the factual allegations remain that LiveIntent's advertisers and publishers perform certain communications that result in the claimed "request[ing]." (*See, e.g.,* D.I. 13 Ex. 6 at 1 (citing excerpt from LiveIntent's website at https://support.liveintent.com/hc/en-us/articles/115001595726-Sending-Your-First-

7

Party-Data-to-LiveIntent, which allegedly shows how advertisers can "upload your first party CRM data and serve ads."))

### 2. AlmondNet Alleges Oracle Performs Part of 1[b]

Step (b) of claim 1 recites how the "profile owner computer" is programmed. (*See* D.I. 13, Ex. 5, cl. 1 ("wherein the profile owner computer is programmed . . .").) In the claim chart attached to the Complaint, AlmondNet originally identified computers operated by Oracle as the "profile owner computer." (See D.I. 13, Ex. 6 at 9-10 ("For example, the profile owner computer (such as, e.g., a computer operated by Oracle) from which indicia of the profile information is received is programmed to automatically select which entities to provide profile information to").) The programming of that profile owner computer by Oracle or another data partner is well outside the purview of LiveIntent, who neither owns nor controls such a computer, so LiveIntent moved to dismiss these allegations.

AlmondNet relies on this same theory in its Amended Complaint and the attached chart, except AlmondNet adds: "Plaintiffs note that this limitation is not itself a method step, but is instead a required configuration of 'the profile owner computer' from which the 'computer system' must 'recei[ve]' profile information in step (a) (and thus acts as an additional limitation to the method step recited in step (a))." Thus, AlmondNet does not dispute Oracle programs the alleged "profile owner computer" or that AlmondNet relies on that programming to satisfy this limitation.

### D. AlmondNet's Pre-Suit Indirect Infringement Allegations For the '398 Patent and Are Boilerplate

The allegations in the Amended Complaint are limited to direct infringement, except for the '398 patent, where AlmondNet also alleges LiveIntent indirectly infringes. For those allegations, AlmondNet relies entirely on the filing and service of the Complaint to establish

8

notice of the alleged infringement. (*See* D.I. 13 at ¶ 14 ("through at least the filing and service of this Complaint, Defendant has had knowledge of the '398 patent").)

## V. ARGUMENT

### A. Legal Standards

A plaintiff must allege factual support for each element of the claim to adequately plead a claim. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))). In this regard, merely reciting the elements of a claim and providing "conclusory statements" without further factual support is insufficient. *Id*. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The purpose of these pleading requirements is (i) to show that plaintiff has some basis for its allegations, and (ii) to put the defendant on fair notice of the claims at issue. *See id*. at 698; *Twombly*, 550 U.S. at 555 (explaining a complaint must "give the defendant fair notice of what the ... claim is and the grounds upon which it rests" (citation omitted)).

Further, "a patentee cannot meet its obligation to assert a plausible claim of infringement under the *Twombly*/*Iqbal* standard by merely copying the language of a claim element and then baldly stating (without more) that an accused product has such an element." *N. Star Innovations*, 2017 WL 5501489, at *2; *SIPCO, LLC v. Streetline, Inc.*, 230 F. Supp. 3d 351, 353 (D. Del. 2017) (dismissing complaint which "contain[ed] no attempt to connect anything in the patent claims to anything about any of the accused products"); *Boston Sci. Corp. v. Nevro Corp.*, 415 F. Supp. 3d 482, 489 (D. Del. 2019) ("[A] plaintiff must generally do more than assert that the product infringes the claim; it must show how the defendant plausibly infringes by alleging some facts connecting the alleging infringing product to the claim elements"). In particular, because

9

AlmondNet asserts only method claims, "to plead a cause of action for direct infringement of a method claim, the complaint must allege that the accused infringer performed all the steps of the claimed method, either personally or through another acting under his direction or control." *10x Genomics, Inc. v. Celsee, Inc.*, No. 19-0862-CFC-SRF, 2019 WL 5595666, at *11 (D. Del. Oct. 30, 2019), *report and recommendation adopted*, 2019 WL 6037558 (D. Del. Nov. 14, 2019) (cleaned up); *see also Shire ViroPharma Inc. v. CSL Behring LLC*, No. 17-414-MSG, 2019 WL 3546692, at *6 (D. Del. Aug. 5, 2019) (same); *Align Tech., Inc. v. 3Shape A/S*, 339 F. Supp. 3d 435, 447 (D. Del. 2018) (same); *Bonutti Skeletal Innovations LLC v. Conformis, Inc.*, No. CV 12-1109-GMS, 2013 WL 6040377, at *2 (D. Del. Nov. 14, 2013) (same).

To state a claim for induced infringement, a plaintiff must allege facts showing that Defendant "knew of the patent and knew as well that the 'induced acts constitute patent infringement.'" *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 639 (2015) (quoting *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011)); *see also Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011) ("induced infringement under § 271(b) requires knowledge that the induced acts constitute patent infringement"). To state a claim for contributory infringement, a plaintiff must allege facts showing that defendant "knew that the combination for which its components were especially made was both patented and infringing and that defendant's components have no substantial non-infringing uses." *Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1312 (Fed. Cir. 2005) (citations omitted).

### B.   AlmondNet Failed to State a Claim of Infringement of the '146 Patent Because It Does Not Identify a Specific Accused Product

"Infringement cannot be shown by a muddled hash of elements from different products, since in order to infringe, 'the accused device must contain each limitation of the claim, either literally or by an equivalent.'" *CAP Co. v. McAfee, Inc.*, No. 14-5068-JD, 2015 WL 4734951, at

10

\*2 (N.D. Cal. Aug. 10, 2015) (quoting *TecSec, Inc. v. Int'l Bus. Machs. Corp.*, 731 F.3d 1336, 1351 (Fed. Cir. 2013)); *see also CTD Networks*, 2023 WL 5417139, at \*5.

AlmondNet's infringement allegations for the '146 patent do not identify a product. Instead, AlmondNet identifies products for some limitations (IdentityGraph and Dynamic Audiences) but not all. And AlmondNet includes vague and incorrect cross references that further confuse the issue. These allegations are just like those that courts have found insufficient at the pleading stage. *Arunachalam v. Apple, Inc.*, 806 F. App'x 977, 981 (Fed. Cir. 2020) (affirming dismissal of complaint that did not "specifically allege how [the accused app] actually infringes the [asserted patent]," and holding "[s]uch overly broad allegations are insufficient to survive a motion to dismiss").

  **C. AlmondNet Failed to State a Claim of Infringement of the '146 or '445 Patent Because It Refers to Actions of Third Parties**

"[T]o plead a cause of action for direct infringement of a method claim, the complaint must allege that the accused infringer performed all the steps of the claimed method, either personally or through another acting under his direction or control." *10x Genomics, Inc. v. Celsee, Inc.,* No. 19-0862-CFC-SRF, 2019 WL 5595666, at \*11 (D. Del. Oct. 30, 2019), report and recommendation adopted, 2019 WL 6037558 (D. Del. Nov. 14, 2019) (cleaned up). AlmondNet does not do that. To the contrary, AlmondNet cites actions of third parties as performing parts of the claims.

For the '146 patent, AlmondNet pleads "LiveIntent and its advertising partners" together perform the step of targeting advertisements, and this step is what satisfies the requirement in the claim for correlating advertisements. (D.I. 13, Ex. 4 at 20.) AlmondNet cannot contend LiveIntent directly infringes a method claim (and thus, performs all of the claimed steps) based

11

on actions performed by LiveIntent's "advertising partners." AlmondNet's allegations as to the '146 patent are therefore deficient on their face.

Similarly, for the '445 patent, AlmondNet alleges third parties perform several of the claimed steps. For Step 1(a), AlmondNet alleges the claimed "request[ing]" is performed by LiveIntent's advertisers performing communications. (D.I. 13, Ex. 6 at 1 (pleading facts demonstrating advertisers and publishers are responsible for communicating certain profile information as satisfying the requirement of "which profile information associated with the visitor matches a profile or kind of profiles requested by an entity controlling the computer system").) Indeed, AlmondNet relied previously on those same facts to demonstrate LiveIntent's "advertiser[s]" and "publisher[s]" work "in coordination" with LiveIntent to communicate profile information. *See* D.I. 1, Ex. 6 at 1. AlmondNet no longer draws that same conclusion from the plead facts, but there is no dispute in what the facts demonstrate.

For step 1(b) of the '445 patent, AlmondNet expressly identifies Oracle as programming the "profile owner computer" in an allegedly infringing manner. AlmondNet is incorrect, as the claim labels step 1(b) as a separate step in claim 1 of the '445 patent. And even if AlmondNet were correct that step 1(b) "is not itself a method step," whether the limitation is itself a step or not is irrelevant—the relevant inquiry is only whether the infringing acts are performed by LiveIntent or a third party. Here, the act AlmondNet alleges infringes the "wherein the profile owner computer is programmed . . ." limitation is performed by Oracle. Thus, AlmondNet cannot contend LiveIntent directly infringes.

### D.  AlmondNet's Indirect Infringement Allegations Should be Dismissed

AlmondNet's Amended Complaint withdraws its indirect infringement allegations for all patents but the '398 patent. *Compare* D.I. 1 at ¶¶ 26-28, 34-37, 43-45 *with* D.I. 13 at ¶¶ 26-28, 34-37, 43-45. With respect to the '398 patent, AlmondNet fails to plead pre-suit knowledge of

the patent and, consequently, it fails to state a claim for indirect infringement. "[L]iability for inducing infringement attaches only if the defendant knew of the patent and that the induced acts constitute patent infringement." *Commil USA*, 575 U.S. at 639. AlmondNet offers no facts suggesting that LiveIntent had pre-suit knowledge of the '398 Patent, yet AlmondNet alleges LiveIntent had knowledge of the '398 Patent "[t]hrough *at least* the filing and service of the original Complaint." (D.I. 13 at ¶14.) To the extent that AlmondNet intends to use the filing of the Original Complaint or its Amended Complaint as a basis for pre-suit knowledge, it fails to state a claim. *See ZapFraud, Inc. v. Barracuda Networks, Inc.*, 528 F. Supp. 3d 247, 252 (D. Del. 2021) (discussing split in District Courts on the issue and holding "the operative complaint in a lawsuit fails to state a claim for indirect patent infringement where the defendant's alleged knowledge of the asserted patents is based solely on the content of that complaint or a prior version of the complaint filed in the same lawsuit.") Thus, AlmondNet's allegations for indirect infringement prior to filing of the Complaint should be dismissed. *Alarm.com, Inc. v. SecureNet Techs. LLC*, 345 F. Supp. 3d 544, 553 (D. Del. 2018) ("Patentees may not collect damages related to indirect infringement for any pre-knowledge conduct.").

AlmondNet's theory of willful blindness does not save its indirect infringement allegations. "To state a claim for willful blindness, a plaintiff *must plead facts* demonstrating that the defendant (1) subjectively believed there was a high probability a particular fact existed or was true, and (2) took deliberate actions to avoid learning of that fact. *MONEC Holding AG v. Motorola Mobility, Inc.*, 897 F. Supp. 2d 225, 230 (D. Del. 2012) (internal quotations omitted)(emphasis added). AlmondNet does not do that. In stating that LiveIntent "subjectively believes that the actions of its customers and partners will result in infringement of the asserted claims, but took deliberate actions to avoid learning of the facts," (D.I. 13 at ¶ 14), AlmondNet

offers nothing more than a restatement of the elements of the claim. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not [state a claim.]") The Court need not accept these allegations as true. Because AlmondNet's claims of indirect infringement rely on the filing of the Complaint and conclusory allegations of willful blindness, they do not state a claim for relief.

## VI.   CONCLUSION

For the reasons stated above, Defendant LiveIntent respectfully requests the Court dismiss AlmondNet's claims of direct infringement as to the claims of the '146 and '445 patent, and dismiss AlmondNet's claims of pre-suit indirect infringement.

Dated:  December 17, 2024  **FISH & RICHARDSON P.C.**

By: */s/ Susan E. Morrison*
Susan E. Morrison (No. 4690)
Grayson P. Sundermeir (No. 6517)
222 Delaware Avenue, 17th Floor
Wilmington, DE 19899-1114
(302) 652-5070
morrison@fr.com
sundermeir@fr.com

Aamir A. Kazi
(GA Bar No. 104235)
1180 Peachtree Street, NE, 21st Floor
Atlanta, GA  30309
(404) 892-5005
kazi@fr.com

*Attorneys for Defendant LiveIntent, Inc.*

15