IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ALMONDNET, INC., INTENT IQ, LLC, and DATONICS LLC, | |
| Plaintiffs, | C.A. No. 24-cv-831-MN |
| v. | JURY TRIAL DEMANDED |
| LIVEINTENT, INC., | |
| Defendant. | |

**ALMONDNET'S ANSWERING BRIEF IN OPPOSITION TO
LIVEINTENT'S MOTION TO DISMISS**

Dated: January 14, 2025

OF COUNSEL:

Reza Mirzaie
Benjamin T. Wang
James A. Milkey
Amy E. Hayden
James S. Tsuei
Daniel B. Kolko
Jason M. Wietholter
RUSS, AUGUST & KABAT
12424 Wilshire Boulevard, 12th Floor
Los Angeles, California 90025
Telephone: (310) 826-7474
rmirzaie@raklaw.com
bwang@raklaw.com
jmilkey@raklaw.com
ahayden@raklaw.com
jtsuei@raklaw.com
dkolko@raklaw.com
jwietholter@raklaw.com

Brian Farnan (#4089)
Michael J. Farnan (#5165)
FARNAN LLP
919 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 777-0300
bfarnan@farnsnlaw.com
mfarnan@farnanlaw.com

*Attorneys for Plaintiffs AlmondNet, Inc.,
Intent IQ, LLC, and Datonics LLC*

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................................ 1

II. NATURE AND STAGE OF PROCEEDINGS ................................................................... 1

III. SUMMARY OF ARGUMENT ........................................................................................... 1

IV. FACTUAL BACKGROUND .............................................................................................. 2

V. LEGAL STANDARD .......................................................................................................... 3

VI. ARGUMENT ....................................................................................................................... 3

    A. The Complaint Sufficiently Pleads Direct Infringement by LiveIntent ..................... 3

        1. LiveIntent's "Single-Product" Argument Is Unsupportable ............................... 5

        2. The Complaint Alleges Only A Single Actor ...................................................... 7

    B. LiveIntent's Motion as to Indirect Infringement Is Moot ........................................ 10

VII. CONCLUSION .................................................................................................................. 11

# TABLE OF AUTHORITIES

**Cases**

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
   882 F.3d 1121 (Fed. Cir. 2018) ................................................................................................ 11

*Arunachalam v. Apple, Inc.*,
   806 F. App'x 977 (Fed. Cir. 2020) .............................................................................................. 6

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)................................................................................................................. 3, 4

*Bausch & Lomb Incorporated v. SBH Holdings LLC*,
   No. 20-1463-LPS, 2022 WL 856750 (D. Del. Mar. 23, 2022)..................................................... 3

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007).................................................................................................................. 3, 4

*Bot M8 LLC v. Sony Corp. of Am.*,
   4 F.4th 1342 (Fed. Cir. 2021) ...................................................................................................... 3

*CAP Co. v. McAfee, Inc.*,
   No. 14-5068-JD, 2015 WL 4734951 (N.D. Cal. Aug. 10, 2015) ................................................ 6

*Connelly v. Lane Const. Corp.*,
   809 F.3d 780 (3d. Cir. 2016) ....................................................................................................... 3

*Corrigent Corp. v. Arista Networks, Inc.*,
   No. CV 22-497-RGA, 2023 WL 2351799 (D. Del. Mar. 3, 2023)........................................... 10

*CTD Networks, LLC v. Google, LLC*,
   688 F. Supp. 3d 490 (W.D. Tex. 2023) ....................................................................................... 6

*CTD Networks, LLC v. Google, LLC*,
   No. 2023-2428, 2024 WL 2587917 (Fed. Cir. May 24, 2024).................................................... 6

*IP Commc'n Sols., LLC v. Viber Media (USA) Inc.*,
   No. 16-134-GMS, 2017 WL 1312942 (D. Del. Apr. 5, 2017) ....................................... 4, 5, 6, 7

*Nalco Co. v. Chem-Mod, LLC*,
   882 F.3d 1337 (Fed. Cir. 2018) .................................................................................................. 4

*Promos Technologies, Inc. v. Samsung Electronics Co.*,
   2018 WL 5630585 (D. Del. Oct 31, 2018) ................................................................................. 4

*TQP Dev., LLC v. Intuit Inc.*,
   No. 2:12-CV-180-WCB, 2014 WL 2809841 (E.D. Tex. June 20, 2014) ................................... 9

**Rules**

Fed R. Civ. P. 12(b)(6)................................................................................................. 3, 5, 10

## I.  INTRODUCTION

In its motion to dismiss, Defendant LiveIntent, Inc. ("LiveIntent") asks the Court to dismiss certain of Plaintiffs AlmondNet, Inc., Intent IQ, LLC, and Datonics LLC's (collectively, "AlmondNet") claims for direct infringement and pre-suit damages as to indirect infringement. (D.I. 17.) But AlmondNet more than adequately pled allegations regarding infringement in its complaint. LiveIntent's criticisms rest on ignoring the complaint (as to infringement and the accused products) or mischaracterizing the claim language. LiveIntent's motion lacks merit and should be denied.

## II.  NATURE AND STAGE OF PROCEEDINGS

On July 18, 2024, AlmondNet filed its complaint against LiveIntent, asserting infringement of four patents: U.S. Patent Nos. 8,677,398 ("'398 Patent"), 8,959,146 ("'146 Patent"), 10,984,445 ("'445 Patent"), and 8,494,904 ("'904 Patent") (collectively, "Asserted Patents"). (D.I. 1.)

On October 7, 2024, LiveIntent filed a motion to dismiss. (D.I. 9.) On November 12, 2024, to address any alleged ambiguities in its initial complaint, AlmondNet amended the complaint. (D.I. 13.) The amended complaint contains detailed allegations regarding the accused products and services, consistent with LiveIntent's descriptions in its own website and public facing documents.

On December 17, 2024, LiveIntent filed this second motion to dismiss. (D.I. 17.)

## III.  SUMMARY OF ARGUMENT

1.  AlmondNet fully complied with pleading requirements by alleging that LiveIntent infringes all limitations of Asserted Patents by making, using, selling, or offering to sell LiveIntent's "People-Based Marketing Platform" product and services. According to LiveIntent own website, "[LiveIntent is] the People-Based marketing Platform that's bridging the gaps between brands and audiences everywhere." (https://www.liveintent.com/about-us/.) The People-Based Marketing Platform is the overall infringing product LiveIntent offers, and it includes each

1

of the accused functionalities identified in AlmondNet's claim charts. LiveIntent's motion requires disregarding AlmondNet's allegations (which must be taken as true), as well as its own website and documents.

2. Further, AlmondNet has identified the actions of LiveIntent alone as infringing all limitations of the Asserted Patents. For example, components of LiveIntent's People-Based Marketing Platform "LiveIntent DSP (together with LiveIntent's Audience Manager) cause the delivery of email advertisements using a hashed email address for a particular consumer as well as profile information linked to the hashed email address, which LiveIntent has collected from a profile owner computer (such as, e.g., a computer operated by Oracle)." (D.I. 13 ¶ 37.) While the email advertisements are often sent on behalf of LiveIntent clients, LiveIntent nonetheless performs all limitations of the Asserted Patents. Likewise, while LiveIntent collects information from third-parties, the claim limitations do not recite any action performed by these third-parties. LiveIntent's motion misconstrues AlmondNet's claim charts and/or the claims themselves.

## IV. FACTUAL BACKGROUND

AlmondNet's first amended complaint ("FAC," D.I. 13) contains detailed allegations regarding LiveIntent's Accused Instrumentalities. For example, ¶ 14 alleges LiveIntent infringes "by providing LiveIntent's People-Based marketing Platform including but not limited to components such as the LiveIntent Identity Graph, Identity Module, HIRO, UID2.0, nonID, and Authentication Bridge services (collectively, 'the Accused Instrumentalities')." (FAC ¶14.)

These allegations are consistent with and supported by LiveIntent's own website and documents. (https://www.liveintent.com/about-us/ ("[LiveIntent is] the People-Based marketing Platform that's bridging the gaps between brands and audiences everywhere."); *see also* D.I. 13.2, "FAC Ex. 2"; D.I. 13.4 "FAC Ex. 4"; D.I 13.6 "FAC Ex. 6"; D.I. 13.8 "FAC Ex. 8".)

The FAC further identifies the Asserted Patents and alleges that LiveIntent itself practices all limitations of one or more claims of each Asserted Patent. (FAC at ¶¶ 16, 25, 33, 42.) The FAC also attaches claim charts comparing one independent method claim of the asserted patents to methods performed by LiveIntent, such as through LiveIntent's People-Based Marketing Platform.

## V. LEGAL STANDARD

When considering a Rule 12(b)(6) motion to dismiss, the Court must accept as true all factual allegations in the complaint and view them in the "light most favorable to the plaintiff." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 791 (3d. Cir. 2016). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and that a recovery is very remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citation omitted). To survive a motion to dismiss, a complaint need only contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). "*Twombly* and *Iqbal* expressly declined to exclude even outlandish allegations from a presumption of truth except to the extent they resembled a formulaic recitation of the elements of a . . . claim or other legal conclusion." *Connelly*, 809 F.3d at 789 (citation omitted). The standard "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Twombly*, 550 U.S. at 545.

## VI. ARGUMENT

### A. The Complaint Sufficiently Pleads Direct Infringement by LiveIntent

AlmondNet's allegations are more than sufficient for pleading direct infringement. A complaint adequately alleges direct infringement by including sufficient facts to "place the alleged infringer on notice of what activity . . . is being accused of infringement." *Bausch & Lomb Inc. v. SBH Holdings LLC*, No. 20-1463-LPS, 2022 WL 856750, at *2 (D. Del. Mar. 23, 2022) (citing *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1352 (Fed. Cir. 2021) (internal quotation marks

3

omitted). While a plaintiff cannot merely assert a plausible infringement claim by "reciting the claim elements and merely concluding that the accused product has those elements," *Id.*, a plaintiff is not required to "plead facts establishing that each element of an asserted claim is met." *Id.* (citing *Nalco Co. v. Chem-Mod, LLC*, 882 F.3d 1337, 1350 (Fed. Cir. 2018).

AlmondNet's allegations are more than adequate to provide LiveIntent with notice of infringement of the Asserted Patents and are sufficient under the plausibility standard of *Iqbal/Twombly*. The FAC identifies the Asserted Patents and alleges that LiveIntent practices all limitations of one or more claims of each patent. (*See* FAC ¶¶ 16, 25, 33, 42.) The FAC attaches claim charts comparing one independent claim of the asserted patents to methods performed by LiveIntent, such as through LiveIntent People-Based Marketing platform. *Promos Technologies, Inc. v. Samsung Electronics Co.*, 2018 WL 5630585, at *2 (D. Del. Oct 31, 2018) ("Under *Twombly* and *Iqbal*, the use of exemplary pleading of claims is sufficient to satisfy Rule 12(b)(6)."). In the context of method claims applied to infringing services, no more is required. *See IP Commc'n Sols., LLC v. Viber Media (USA) Inc.*, C.A. No. 16-134-GMS, 2017 WL 1312942, at *3 (D. Del. Apr. 5, 2017) ("To require that [plaintiff] name a specific infringing product would be nonsensical in this instance. It is unclear how [plaintiff] can be any more specific about what aspects of [defendant's] technology infringe its patent when [plaintiff] likely does not have access to [defendant's] computer code.").

Notably, LiveIntent does not contend that AlmondNet's charts merely repeat the claim language. Instead, LiveIntent contends "[t]he product identification is contradictory" and "AlmondNet cites actions of third parties as performing parts of the claims." D.I. 17 at 5, 11. Neither is true.

4

        **1.**        **LiveIntent's "Single-Product" Argument Is Unsupportable**

LiveIntent's "single product" requirement is inconsistent with the pleading requirements for method claims applied to infringing services. *See Viber Media (USA) Inc.,* 2017 WL 1312942, at *3. (acknowledging that an invention may cover the way "components work together" and not be limited to a single product). And regardless, the FAC expressly accused a single overall product: "LiveIntent's People-Based marketing Platform." (*See* FAC ¶ 14 (defining LiveIntent's Accused Instrumentalities)). Indeed, based on LiveIntent's own website and documents, AlmondNet alleges the following:

- "…LiveIntent's People-Based Marketing Platform include[s] but not limited to components such as the LiveIntent Identity Graph, Identity Module, HIRO, UID2.0, nonID, and Authenticated Bridge services (collectively, "the Accused Instrumentalities"), which are sold and specifically configured to infringe the asserted claims, to LiveIntent customers and partners in the United States, such as, e.g., LiveIntent header bidding partner, DSP partner, or SSP partner." (*Id.*).

- "[LiveIntent is] the People-Based marketing Platform that's bridging the gaps between brands and audiences everywhere." (https://www.liveintent.com/about-us/ .)

For purposes of a motion to dismiss under Rule 12(b)(6), these factual allegations must be taken as true. And these allegations are more than plausible—the descriptions of LiveIntent's People-Based Marketing Platform products and services that AlmondNet included in the FAC based on LiveIntent's own website. As such, the fact that AlmondNet identifies functionality relating to LiveIntent's DSP, Identify Graph and Dynamic Audience for one limitation, LiveIntent's DSP for another, and Identify Graph and Dynamic Audiences for a third[1] is of no consequence. These components work together to provide what LiveIntent describes as a People-Based Marketing Platform. Even if the law *did* require AlmondNet to chart a single product against all elements of

---

[1] Additionally, LiveIntent makes note of references to other patents and claims. (D.I. 17 at 5.) However, as LiveIntent never alleges any deficiency based on these inclusions they also do not form the basis for dismissal.

a method claim (which it does not), an argument about what services constitute a "product" in this context is merely a matter of semantics when LiveIntent describes its entire company as providing a unified "Marketing Platform."

LiveIntent simply ignores AlmondNet's amended complaint and fails to cite any authority from this District or the Federal Circuit that requires LiveIntent's alleged pleading standard[2] (*see* Motion at 10-11), which is contrary to Delaware and Federal Circuit precedent. Again, in the context of *services* that may infringe, this District has held that requiring a complaint to map only a single specific infringing product would be nonsensical. *See Viber Media (USA) Inc.,* 2017 WL 1312942, at *3 ("It is unclear how IPCS can be any more specific about what aspects of Viber's technology infringe its patent when IPCS likely does not have access to Viber's computer code.").

Based on LiveIntent's website and documents, AlmondNet understands LiveIntent's overall "People-Based Marketing Platform" to include each of the accused functionalities identified in AlmondNet's claim charts. In cursory fashion, LiveIntent attempts to characterize the components or parts of its People-Based Marketing Platform as "several different products." (D.I. 17 at 5.) But LiveIntent's attorney characterizations have no bearing in the posture of a motion to dismiss, where AlmondNet's well-pleaded allegations should be taken as true. Moreover, there is

---

[2] The authority cited by LiveIntent is inapposite. *CAP Co. v. McAfee, Inc.,* No. 14-5068-JD, 2015 WL 4734951 (N.D. Cal. Aug. 10, 2015) relates to another district's local rule's requirements for infringement contentions, and appears to involve products that do not interact together as part of a complete platform, as is the case here. And *Arunachalam v. Apple, Inc.,* 806 F. App'x 977 (Fed. Cir. 2020) involved an incoherent agglomeration of patent, anti-trust, RICO Act, trade secret, fraud, and treason claims made by a pro se plaintiff. *CTD Networks, LLC v. Google, LLC*, 688 F. Supp. 3d 490, 502 (W.D. Tex. 2023), *appeal dismissed*, No. 2023-2428, 2024 WL 2587917 (Fed. Cir. May 24, 2024) concerned claims that "plainly recite *systems* with *hardware* components." (emphasis in original.)

*no evidence* that what LiveIntent alludes, that the "different products" do not operate together to infringe as a single product or platform. To the contrary, LiveIntent's website suggests that the "People-Based Marketing Platform" is the overall platform that LiveIntent operates, and this platform is what provides all the technology and services at issue in this case. (https://www.liveintent.com/about-us/ ("[LiveIntent is] the People-Based marketing Platform that's bridging the gaps between brands and audiences everywhere."); *see also* https://support.liveintent.com/content-policy/ (prohibiting certain content from "the LiveIntent Platform").) And even if LiveIntent's contention that the alleged infringing functionality is carried out by different named products were accepted as true, that would still be irrelevant to the sufficiency of AlmondNet's complaint. *See Viber Media (USA) Inc.,* 2017 WL 1312942, at *3 (explaining that infringement can be adequately pled by alleging "components [that] work together" to perform the infringing method).

### 2. The Complaint Alleges Only A Single Actor

AlmondNet's allegations are directed exclusively to LiveIntent and only by misreading the evidence, the claims, or both can LiveIntent contend otherwise.

First, AlmondNet never pleads "LiveIntent and its advertising partners together" perform any limitations of the '146 Patent and LiveIntent cannot show otherwise. The relevant portion of claim 1 of the '146 Patent requires "the advertisement is correlated with the indicated profile attribute." AlmondNet explains "LiveIntent and its advertising partners target the advertisement directed to the visitor… based on profile data … such that the resulting advertisement is correlated with the profile attributes." (FAC Ex. 4 at 20.) It is LiveIntent's actions, in furtherance of targeting advertisements of its advertising partners, that meet the limitation. AlmondNet cites public LiveIntent documents showing how LiveIntent, not the advertisers, perform the correlation. (*Id*. at 26 ("Where a business partner has allowed us [(LiveIntent)] to use the information for our own

7

purposes, we use it for the following limited and specified purposes: to provide the Services, such as to facilitate the delivery of an reporting personalized messages and targeted advertising…").) LiveIntent's motion fails to engage with these documents or the substance of AlmondNet's claim chart. Because the '146 Patent Claim Chart never alleges any party other than LiveIntent performs any limitation, dismissal is inappropriate.

LiveIntent's second allegation that an advertiser (rather than LiveIntent) performs a claim limitation fares no better. In relevant part, claim 1 of the '445 Patent requires "profile information associated with the visitor matches a profile or kind of profiles requested by an entity controlling the computer system." AlmondNet alleges the "Accused Instrumentalities receive profile information … requested by LiveIntent." AlmondNet supports this allegation with citations to LiveIntent's public documents discussing "Sending Your First-Party Data to LiveIntent." (FAC Ex. 6 at 1.) Because LiveIntent's documents characterize the activity as a user "sending," LiveIntent contends this document can only show action by the third party. Not so.

In uncolored language, these documents instruct LiveIntent users on how to establish direct integrations between partnered DMPs (Data Management Platforms) and the LiveIntent system. (FAC Ex. 6 at 3.) LiveIntent instructs its users to perform a number of steps where the user provides Oracle with the user's LiveIntent ID and LiveIntent with the user's Oracle ID then provides both Oracle and LiveIntent details regarding what information the user wants sent from Oracle to LiveIntent. (*Id.*) The evidence provided is sufficient to plausibly infer that the instructions themselves are a request by LiveIntent for a profile or kind of profiles, and/or the described integration and resulting transfer involves a request by LiveIntent to the partnered DMPs for profile information. Regardless, AlmondNet's FAC clearly puts LiveIntent on notice of what activity constitutes infringement of this limitation.

8

Whether LiveIntent contends its servers do not send server-server request or that its instruction to its users to provide it with profile information does not meet the "request" limitation, AlmondNet has met its burden. The first is a fact question and the documents cited by LiveIntent do not render AlmondNet's allegation implausible. While the cited document characterizes the transfer as "sending," as a user facing document it is not expected to be so technically specific. The question of precisely what messages are exchanged between servers is for a review of the source code later in discovery. Further, LiveIntent's briefing does not appear to even contemplate the latter that it requests profiles from its users. Under either theory, AlmondNet has plausibly pled LiveIntent, not its users or partnered DMPs, "request[s]" profile information.

LiveIntent's last argument misconstrues the claims and asks the Court to engage in early claim construction. Claim 1 of the '455 Patent requires "receipt from a profile owner computer of indicia of the profile information … wherein the profile owner computer is programmed…." LiveIntent contends that because the "profile owner computer" is managed by one of various partnered DMPs and LiveIntent does not program their computers, it cannot infringe. But claim 1 does not require any *specific* party to program the profile owner computer, and instead intentionally uses passive voice indicating merely the functionality that the profile owner computer must be configured to perform.

Claim 1 of the '445 Patent does not claim the programming of the profile owner computer. What is claimed is "receipt from a profile owner computer … [that has been] programmed …." To borrow a phrase from Judge Bryson, programming the profile owner computer is a prefatory step that need not be performed by LiveIntent. *See TQP Dev., LLC v. Intuit Inc.*, No. 2:12-CV-180-WCB, 2014 WL 2809841, at *12 (E.D. Tex. June 20, 2014) (Bryson, C. J., sitting by designation) ("… provided by, programmed by, or configured by … is prefatory to the steps recited in the

9

claim… [and] do not create a divided infringement scenario, because those decisions do not correspond to any claim limitations."). The fact that someone (perhaps most logically the owner of the profile owner computer rather than Oracle itself) must have at some point programmed the profile owner computer does not prevent the claim limitation from being met; while the "profile owner computer" must be so programmed, the claim is unconcerned with how.

Accordingly, AlmondNet has complied with the requirements of Rule 12(b)(6) by alleging that LiveIntent, not LiveIntent with third parties, infringes one or more claims of each Asserted Patent, including through LiveIntent's People-Based Marketing Platform product and services. Because the FAC fully complies with the relevant pleading standards for direct infringement, LiveIntent's motion should be denied.

      **B.**     **LiveIntent's Motion as to Indirect Infringement Is Moot**

Finally, LiveIntent seeks dismissal of AlmondNet's claims of past indirect infringement as to the '398 Patent. (D.I. 17 at 12-14.) However, AlmondNet's First Amended Complaint does not assert past indirect infringement. Where the First Amended Complaint alleges "Defendant has also infringed, and continues to infringe," it only alleges "Defendant also knowingly and intentionally induces infringement." (FAC at ¶¶ 14-15.) In other words, AlmondNet asserted past and continuing direct infringement but only continuing indirect infringement. As such, LiveIntent's motion as to past indirect infringement is moot.

To the extent the Court disagrees and finds that past indirect infringement was alleged, AlmondNet agrees to dismissal of its claims for past induced infringement for the '398 Patents without prejudice. Dismissal without prejudice would be appropriate, and AlmondNet reserves the right to seek leave to amend, including based on discovery. *See Corrigent Corp. v. Arista Networks, Inc.*, No. CV 22-497-RGA, 2023 WL 2351799, at *1 n. 1 (D. Del. Mar. 3, 2023) (rejecting Defendant's request that any of the dismissals be with prejudice) ("[P]laintiffs

sometimes discover information that they do not already possess. If they obtain such information, they may, depending upon circumstances, seek to amend their complaint.").

## VII. CONCLUSION

For the foregoing reasons, LiveIntent's motion to dismiss AlmondNet's claims for direct infringement and past damages should be denied in their entirety. If the Court is inclined to grant either part of LiveIntent's motion, AlmondNet should be given leave to amend its pleadings. *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1126 (Fed. Cir. 2018).

Dated: January 14, 2025

OF COUNSEL:

Reza Mirzaie
Benjamin T. Wang
James A. Milkey
Amy E. Hayden
James S. Tsuei
Daniel B. Kolko
Jason M. Wietholter
RUSS, AUGUST & KABAT
12424 Wilshire Boulevard, 12th Floor
Los Angeles, California 90025
Telephone: (310) 826-7474
rmirzaie@raklaw.com
bwang@raklaw.com
jmilkey@raklaw.com
ahayden@raklaw.com
jtsuei@raklaw.com
dkolko@raklaw.com
jwietholter@raklaw.com

Respectfully submitted,

FARNAN LLP

*/s/ Brian E. Farnan*
Brian Farnan (#4089)
Michael J. Farnan (#5165)
919 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 777-0300
bfarnan@farnsnlaw.com
mfarnan@farnanlaw.com

*Attorneys for Plaintiffs AlmondNet, Inc., Intent IQ, LLC, and Datonics LLC*