# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ALMONDNET, INC. and INTENT IQ, LLC, and DATONICS LLC,<br><br>    Plaintiffs,<br><br>    v.<br><br>LIVEINTENT, INC.,<br><br>    Defendant. | C.A. No. 24-00831-MN<br><br>**JURY TRIAL DEMANDED** |

## REPLY BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

Dated: January 28, 2025

Susan E. Morrison (No. 4690)
Grayson P. Sundermeir (No. 6517)
FISH & RICHARDSON P.C.
222 Delaware Avenue, 17th Floor
Wilmington, DE 19899-1114
(302) 652-5070
morrison@fr.com
sundermeir@fr.com

Aamir A. Kazi (*pro hac vice*)
(GA Bar No. 104235)
1180 Peachtree Street, NE, 21st Floor
Atlanta, GA 30309
(404) 892-5005
kazi@fr.com

*Attorneys for Defendant*
*LIVEINTENT, INC.*

**TABLE OF CONTENTS**

I.    INTRODUCTION ...........................................................................................................1

II.    ARGUMENT ..................................................................................................................2

    A.    AlmondNet's Allegations for the '146 Patent Should be Dismissed .................................................................................................2

        1.    AlmondNet does not identify any product that performs the allegedly infringing acts ............................................................2

        2.    AlmondNet relies on actions of third parties to allege the "wherein the advertisement is correlated with the indicated profile attribute or attributes" limitation is satisfied ......................................................................................5

    B.    AlmondNet's Allegations for the '445 Patent Should be Dismissed .................................................................................................6

        1.    AlmondNet relies on actions of third parties to allege the ". . . profiles requested by an entity controlling the computer system . . ." limitation is satisfied. ................................7

        2.    AlmondNet alleges Oracle performs the "wherein the profile owner computer is programmed . . ." limitation ................8

    C.    AlmondNet's Allegations of Pre-Suit Indirect Infringement Should be Dismissed ..............................................................................10

III.    CONCLUSION ............................................................................................................10

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Eidos Commc'ns, LLC v. Skype Techs. SA*,
    686 F. Supp. 2d 465 (D. Del. 2010)......................................................................................4

*IP Commc'n Sols., LLC v. Viber Media (USA) Inc.*,
    2017 WL 1312942 (D. Del. Apr. 5, 2017).................................................................1, 2, 3, 5

*TeleSign Corp. v. Twilio, Inc.*,
    2016 WL 4703873 (C.D. Cal. Aug. 3, 2016)........................................................................4

*TQP Dev., LLC v. Intuit Inc.*,
    2014 WL 2809841 (E.D. Tex. June 20, 2014)...................................................................8, 9

**I.      INTRODUCTION**

AlmondNet is unable to answer the straightforward question of what is accused of infringing the '146 and '445 patents.  Start with the '146 patent.  Nowhere in its opposition does AlmondNet cite a direct statement that a specific LiveIntent product or a specific set of functionality at LiveIntent performs the claim limitations.  AlmondNet's Amended Complaint and accompanying chart reference different LiveIntent products for different limitations, but not in any way that any LiveIntent product would satisfy all claim limitations under AlmondNet's stated claim.  AlmondNet argues all LiveIntent products collectively infringe.  This is not AlmondNet's currently stated claim, and regardless, the open-ended, non-limiting language AlmondNet relies upon has been criticized by courts across the country, including the *Viber* court AlmondNet relies upon in its Opposition.  And where AlmondNet cannot even rely on the collective functionality provided by all of LiveIntent's products, AlmondNet points to third parties, such as LiveIntent's advertising partners.

For the '445 patent, LiveIntent's motion identified two limitations where the accused functionality was provided by a third party: (1) the claimed "request" for profile information; and (2) the use of a "profile owner computer."  AlmondNet at least disputes that its claim charts refer to third party activity for the alleged "request[ed]" profile information, but there is no other plausible interpretation of AlmondNet's stated allegation or the underlying documentation.  For the "profile owner computer" limitation, there is no dispute.  AlmondNet confirms it relies upon a third-party computer as the claimed "profile owner computer."  Because the majority of the claim limitations are attributed to this "profile owner computer," AlmondNet's stated claim refers to third party systems and not LiveIntent systems.

1

Thus, AlmondNet's allegations of direct infringement of the '146 and '445 patents should be dismissed. And because AlmondNet has affirmed it is not pursuing indirect infringement as to these patents, its only claim is direct infringement, and these patents should be dismissed.

## II.     ARGUMENT

### A.     AlmondNet's Allegations for the '146 Patent Should be Dismissed

AlmondNet's Opposition demonstrates why AlmondNet's allegations for the '146 patent should be dismissed. AlmondNet argues that it need not identify a "single product" of infringing the '146 patent. LiveIntent does not contend otherwise. Rather, LiveIntent argues it cannot tell what is accused because AlmondNet does not identify any actor or product that satisfies all of the claim limitations. AlmondNet's Amended Complaint (including the accompanying charts) haphazardly lists different LiveIntent products and generally reference third party activities (such as LiveIntent's advertising partners). As a result, there is no way to tell what is accused of infringing the '146 patent, and AlmondNet's allegations should be dismissed.

#### 1.     *AlmondNet does not identify any product that performs the allegedly infringing acts*

AlmondNet acknowledges its infringement theory for the '146 patent refers to LiveIntent's DSP, Identity Graph, and Dynamic Audiences for one limitation, LiveIntent's DSP for another limitation, and LiveIntent's Identity Graph and Dynamic Audiences for a third limitation. D.I. 21 ("Opposition") at 5. Because AlmondNet identifies different products for different limitations within the same claim—and fails to identify any product that performs each of the claim limitations—AlmondNet's Amended Complaint should be dismissed.

AlmondNet relies on *Viber* to argue the pleading requirement does not require identifying a "single product." LiveIntent agrees, but the complaint must still provide fair notice of what is accused. *IP Commc'n Sols., LLC v. Viber Media (USA) Inc.,* 2017 WL 1312942, at *1 (D. Del.

Apr. 5, 2017) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). One way to provide such notice is to identify the product alleged to infringe, but the patent owner can also describe the accused functionality—if the description provides notice. *Id.* at *3 ("The Bender court explained that '[s] sufficient allegations would include, at a minimum, a brief description of what the patent at issue does, and an allegation that certain named and specifically identified products or product components also do what the patent does.'"); *id.* (denying a motion to dismiss because the complaint "provides specific details of how Defendant's application and servers infringe"). In *Viber,* for example, the complaint identified specific accused functions, though it did not name the product performing those functions. *Id.* at *1. "Defendants acknowledge[d]" the complaint "provide[d] ***specific details of how Defendant's application and servers infringe*** the '071 patent claims[.]" *Id.* (emphasis added). Because the specific details put the defendant on notice of what was alleged to infringe—regardless of whether the product(s) were identified by name—the court denied defendants' motion to dismiss. *Id.*

      The problem that LiveIntent identifies with AlmondNet's Amended Complaint is the opposite: the Amended Complaint refers to different LiveIntent products by name but no products are accused of satisfying each limitation. And AlmondNet provides no details as to how those products infringe, making it impossible for LiveIntent to understand what is actually accused. D.I. 17 ("Motion") at 5 ("There is no explanation as to why AlmondNet identifies these products, or whether AlmondNet contends these products satisfy the preamble individually, collectively, or otherwise.").

      Tacitly recognizing this failure of the pleading standard, for the first time in its Opposition AlmondNet argues the different LiveIntent products work together to form one allegedly infringing platform (as opposed to each product independently infringing). But

3

AlmondNet cannot sidestep the pleading standard by referring to all of LiveIntent's products as a "platform" and then accusing that whole platform (and thus, effectively every LiveIntent product) of infringement. *Eidos Commc'ns, LLC v. Skype Techs. SA,* 686 F. Supp. 2d 465, 467 (D. Del. 2010) (granting motion to dismiss where complaint did not identify a product or even a product category but instead generically referred to defendants' "communication system products and/or methodologies"); *see also TeleSign Corp. v. Twilio, Inc.*, 2016 WL 4703873, at *2-3 (C.D. Cal. Aug. 3, 2016) (finding failure of notice where plaintiff did "not plausibly allege that any one product produced by Defendant performs all elements" nor "plausibly allege that multiple products tied to the various claim elements are used conjunctively to infringe."). And regardless, there is no such disclosure in AlmondNet's Amended Complaint. The Amended Complaint refers to different LiveIntent products—including what AlmondNet now refers to as a "single overall products" as separate products. *Compare* Opposition at 5 (purporting to accuse "a single overall product"); *with* D.I. 13 ("FAC") ¶ 12 (defining the "LiveIntent's People Based Marketing Platform" as a part of the "Accused Instrumentalities"). Similarly, the claim charts accompanying the Amended Complaint refer to different LiveIntent products as satisfying different limitations of a single claim. For example, AlmondNet alleges the preamble is satisfied by a "portion of LiveIntent's Accused Instrumentalities," which AlmondNet defines using open-ended language ("a ***portion of LiveIntent's Accused instrumentalities which include*** LiveIntent's People-Based Marketing Platform ***including but not limited to*** components such as the Identity Graph, Identity Module, Monetization, and DSP"):

| Claim 1 | LiveIntent's Infringement |
|---|---|
| 1[pre]. A method of directing electronic advertisements, performed by a computer system comprised of one or more computers, the method comprising: | To the extent the preamble is limiting, LiveIntent performs a method of directing electronic advertisements, performed by a computer system comprised of one or more computers (e.g., a portion of LiveIntent's Accused Instrumentalities which include LiveIntent's People-Based Marketing Platform including but not limited to components such as the LiveIntent Identity Graph, Identity Module, Monetization, and LiveIntent DSP).<br><br>*See, e.g.*, evidence and analysis for claim limitations (a)-(c) below; https://www.liveintent.com/blog/3-ways-to-buy-email-advertising-inventory/#:~:text=Open%20exchange&text=Everyone%20participates%20in%20the%20process,we've%20built%20direct%20partnerships: |

FAC Ex. 4 at 1. The references to multiple "Accused Instrumentalities" and usage of that label throughout the pleading and charts demonstrates AlmondNet intended to accuse multiple products and services, not one single "platform" as AlmondNet now suggests in its opposition.

AlmondNet's vague reference to an open-ended list of products (and specifically, a "portion" of those products) is precisely the type of pleading the court said would be insufficient in *Viber*. *Viber,* 2017 WL 1312942, at *1 (finding the allegations in *Viber* sufficient because they disclosed "specific details of how Defendant's application and servers infringe," as compared to allegations that "accused only 'categories of products' the defendants produced 'by way of example and without limitation'" and were found to be insufficient).

Thus, AlmondNet's allegations as to the '146 patent should be dismissed.

        **2.**    *AlmondNet relies on actions of third parties to allege the "wherein the advertisement is correlated with the indicated profile attribute or attributes" limitation is satisfied*

The limitation at issue requires an advertisement "is correlated with . . . profile attributes." AlmondNet contends this limitation is satisfied by serving targeted advertisements. Opp. at 7 ("AlmondNet explains 'LiveIntent and its advertising partners target the advertisement directed to the visitor… based on profile data … such that the resulting advertisement is correlated with the profile attributes.'"). AlmondNet argues it never pleads "LiveIntent and its advertising partners together" perform this limitation. Opp. at 7. But that is precisely what AlmondNet alleges in the claim chart accompanying the Amended Complaint, where

5

AlmondNet alleges "LiveIntent and its advertising partners" together serve targeted advertisements to satisfy this limitation:



FAC Ex. 4 at 20 (annotation added).

In fact, AlmondNet's Opposition does not identify any allegation it its Amended Complaint (or the accompanying claim chart) attributing the delivery of targeted advertisements to LiveIntent by itself. AlmondNet instead relies on an excerpt buried in six pages of block quotes to supposedly demonstrate "LiveIntent, not the advertisers, perform the correlation." Opp. at 7. But the excerpt in full also implies actions by third parties in targeted advertising, as it states LiveIntent uses certain data "to *facilitate* the delivery of . . . targeted advertising." *Id.* at 7-8 (citing FAC Ex. 4 at 26).

Thus, AlmondNet has not provided fair notice of what is accused of infringing the '146 patent, and its claim should be dismissed.

### B. AlmondNet's Allegations for the '445 Patent Should be Dismissed

AlmondNet's claim against the '445 patent should be dismissed because it is unclear what AlmondNet is accusing of infringement. Whereas AlmondNet asserts LiveIntent performs the claimed method, AlmondNet's Amended Complaint and the accompanying claim chart allege third parties perform claim steps. AlmondNet's Opposition argues otherwise, but the very evidence AlmondNet relies upon contradicts AlmondNet's contention.

> **1.  *AlmondNet relies on actions of third parties to allege the ". . . profiles requested by an entity controlling the computer system . . ." limitation is satisfied.***

The limitation at issue requires "request[ing]" profile information, which AlmondNet originally asserted was satisfied by LiveIntent acting "in coordination with an advertiser / publisher" in the claim chart accompanying the Original Complaint. Motion at 6-7 (citing D.I. 1, Ex. 6 at 1). In response to LiveIntent's Motion to Dismiss the Original Complaint, AlmondNet removed the explicit reference to LiveIntent acting "in coordination with an advertiser / publisher." *Id.* at 7. But the rest of the claim chart provided with the Amended Complaint was untouched, including the reliance on evidence referring to actions by third parties (and only third parties), making it impossible to tell what specific actions by LiveIntent AlmondNet alleges infringes.

AlmondNet argues the claim chart identifies "requests" by LiveIntent, but AlmondNet's argument contradicts the evidence it cites. AlmondNet cites a passage on page 3 of its claim chart for the '445 patent, which it alleges evidences a "request" for certain data. Opp. at 8 ("[T]he evidence provided is sufficient to plausibly infer that the instructions themselves are a request by LiveIntent for a profile or kind of profiles."). *Id.* But the cited passage is not referring to LiveIntent "requesting" data or any actions by LiveIntent—rather, it refers to the user (a third party) selecting when to provide data and also selecting which data it wants to share:

> With LiveIntent's integration with Oracle, ***you can easily sync your audiences to LiveIntent's platform.*** Below is a guide that outlines the steps you must take to set up LiveIntent as a Destination in Oracle's DMP.
>
> . . .
>
> 4. Once LiveIntent has confirmed your Oracle ID is mapped into your LiveIntent account, ***you can login to Oracle and select the audiences that you want to send to LiveIntent.***

FAC Ex. 6 at 3 (emphasis added).

7

AlmondNet criticizes LiveIntent as improperly interpreting the cited documents as referring to a user "sending" data, but there is no other plausible interpretation of AlmondNet's allegations. And it is not only the case that the cited documents refer to a user sending data, they also state the user is the one that selects when to "sync" data and which data to "send." None of these allegedly infringing actions—which AlmondNet refers to as the alleged "request"—are performed by LiveIntent. It is impossible to tell what action by LiveIntent, as opposed to the actions of one of its customers or another third party, is accused and therefore AlmondNet's claim should be dismissed.

### 2. *AlmondNet alleges Oracle performs the "wherein the profile owner computer is programmed . . ." limitation*

AlmondNet acknowledges its infringement theory refers to a third-party computer as the claimed "profile owner computer." Opp. at 9-10. LiveIntent therefore cannot directly infringe under AlmondNet's stated claim, because it is not responsible for these third-party computers.

AlmondNet cites *TQP Dev., LLC v. Intuit Inc*. to argue LiveIntent can still directly infringe, but *TQP* does not support AlmondNet's argument. *TQP* was addressing a divided infringement argument. The asserted claim in *TQP* includes steps performed by defendants' servers and other steps performed by defendants' clients. *TQP Dev., LLC v. Intuit Inc.,* 2014 WL 2809841, at *11 (E.D. Tex. June 20, 2014). "The argument over divided infringement therefore comes down to whether, when the defendants practice the steps of the claimed invention involving transmitting encrypted data, they direct or control the steps that are performed by the receiving client computers." *Id.* As a part of that argument, the *TQP* defendants argued "that the clients' computers 'are not provided by, programmed by, or configured by Defendants.'" *Id.* at *12. The court rejected that argument because these steps (providing, programming, and configuring) "do not correspond to any claim limitations." *Id.*

By comparison, the asserted claim here expressly requires that the "profile owner computer is programmed." FAC Ex. 5 ('445 Patent) at cl. 1. It cannot be said that the step of programming is "prefatory" as AlmondNet claims in its brief. (D.I. 21 at 9-10.) Unlike the computers in *TQP*, the "programming" of the third-party computer is expressly required claim element. (*Id*.) And the "profile owner computer" must then perform a significant number of steps in the claim based on its programming (annotated in red):

> 1. A method of causing delivery of electronic advertisements based on provided profiles comprising:
>
> (a) with a computer system automatically storing, in a central database associated with the computer system, profile information associated with a visitor, as a result of electronic receipt from a profile owner computer of indicia of the profile information, which profile information associated with the visitor matches a profile or kind of profiles requested by an entity controlling the computer system, wherein a tag associated with a visitor device serves as a link to the profile information associated with the visitor;
>
> (b) wherein the profile owner computer is programmed:
>
> (i) to automatically select a media property entity of a plurality of media property entities based on a comparison of (A) profile information about a visitor who electronically accessed electronic apparatus of a profile supplier with (B) a plurality of stored requests from the plurality of media property entities, one of which media property entities is the entity controlling the computer system, each stored request being for requested profiles or kinds of profiles, which plurality of stored requests includes the profile or kind of profiles requested by the entity controlling the computer system, and
>
> (ii) when the media property entity is the entity controlling the computer system, to automatically arrange for electronic storage of a requested profile linked to the tag that is associated with the visitor device, the tag being readable by equipment that is part of the computer system of part (a); and (c) later, when the visitor device is available to receive an advertisement, with the computer system, (i) using the tag of part (a) that is associated with the visitor device to access the profile information stored in the central database, and (ii) using the profile information linked to the tag of part (a) to automatically cause delivery of an electronic advertisement to the visitor device, wherein the electronic advertisement is dependent on the profile information associated with the visitor.

9

FAC Ex. 5 at cl. 1. (annotated). None of these subsequent steps are performed by LiveIntent if the "profile owner computer" is a third-party computer, and thus, AlmondNet has not made out a claim that LiveIntent directly infringes the claims of the '445 patent.

Thus, AlmondNet's claim of infringement for the '445 patent should be dismissed.

### C. AlmondNet's Allegations of Pre-Suit Indirect Infringement Should be Dismissed

AlmondNet's Amended Complaint is vague on this issue, as it generally alleges indirect infringement (inducement and contributory infringement) but does not expressly limit its allegations to post-filing. *See, e.g.,* FAC ¶ 14. But because AlmondNet now agrees it has not alleged pre-suit indirect infringement (Opp. at 10), its indirect allegations should be dismissed for any activities that occurred prior to the filing of the suit.

### III. CONCLUSION

For the reasons stated above, Defendant LiveIntent respectfully requests the Court dismiss AlmondNet's claims of direct infringement as to the claims of the '146 and '445 patent and dismiss AlmondNet's claims of pre-suit indirect infringement.


|  |  |
|---|---|
| Dated: January 28, 2025 | **FISH & RICHARDSON P.C.**<br><br>By: */s/ Grayson P. Sundermeir*<br>Susan E. Morrison (No. 4690)<br>Grayson P. Sundermeir (No. 6517)<br>222 Delaware Avenue, 17th Floor<br>Wilmington, DE 19899-1114<br>(302) 652-5070<br>morrison@fr.com<br>sundermeir@fr.com<br><br>Aamir A. Kazi (*pro hac vice*)<br>(GA Bar No. 104235)<br>1180 Peachtree Street, NE, 21st Floor<br>Atlanta, GA  30309<br>(404) 892-5005<br>kazi@fr.com<br><br>*Attorneys for Defendant LiveIntent, Inc.* |