IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ALMONDNET, INC., INTENT IQ, LLC, and DATONICS, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>LIVEINTENT, INC.,<br><br>Defendant. | C.A. No. 24-cv-831 (MN)<br>CONSOLIDATED<br>LEAD CASE |
| INTENT IQ, LLC,<br><br>Plaintiff,<br><br>v.<br><br>INVIDI TECHNOLOGIES CORPORATION<br>Defendant. | C.A. No. 25-cv-809 (MN) |

**OPENING BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

DATED: October 6, 2026

Warren K. Mabey, Jr. (#5775)
FISH & RICHARDSON P.C.
222 Delaware Avenue, 17th Floor
Wilmington, DE 19801
Telephone: (302) 652-5070
E-mail: mabey@fr.com

Steven R. Katz
FISH & RICHARDSON P.C.
One Marina Park Drive
Boston, MA 02210
Telephone: (617) 532-5070
katz@fr.com

Attorneys for Defendant
Invidi Technologies Corporation

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........ 1

II. NATURE AND STAGE OF THE PROCEEDINGS ........ 2

III. SUMMARY OF THE ARGUMENT ........ 3

IV. LEGAL STANDARDS ........ 4

A. Rule 12(b)(6) ........ 4

V. ARGUMENT ........ 4

A. The Amended Claim Chart Pleads No Fact Suggesting That Invidi Performs The "Recognizing" Step of Limitation 1(b) ........ 4

1. The Court has already rejected Intent IQ's reliance on the Swedish privacy policy ........ 6

2. Invidi's "household classification" definition says nothing about a computer system recognizing connections to a common local area network ........ 6

3. Invidi's definition of "Ad Decision Engine" points away from infringement because it targets ads using characteristics assigned to a set-top box ........ 7

4. The LiveIntent blog post, written by an unrelated third-party about an unrelated system, says nothing about how Invidi's system works ........ 8

5. The Invidi webpages say that Invidi can reach multiple devices in a household—not that it associates devices by recognizing that they had been connected to the same local area network ........ 10

B. The Court Should Place Conditions On the Grant of Any Subsequent Motion For Leave ........ 12

VI. CONCLUSION ........ 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .....4

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .....4

*Bot M8 LLC v. Sony Corp. of Am.*,
4 F.4th 1342 (Fed. Cir. 2021) .....4

*Foman v. Davis*,
371 U.S. 178 (1962) .....12

*Maimon v. United States*,
175 Fed. Cl. 553 (2025) .....2

*Santoro v. Tower Health*,
No. 24-3173, slip op. (3d Cir. Aug. 28, 2026) .....12

**Other Authorities**

Fed. R. Civ. P. 15(a)(2) .....12

Rule 11 .....3

Rule 12(b)(6) .....1, 4

# I. INTRODUCTION

Intent IQ's '398 patent requires that a computer system associate two devices "based on automatically recognizing that each of the first and second devices was connected, independently of the other, to a common local area network." (Limitation 1(b)). Intent IQ's counsel told this Court that this association by "recognizing" distinguished the invention from the prior art. Yet the First Amended Complaint, like the original complaint, presents factual allegations showing only that Invidi provides targeted advertising to households having multiple devices. None of the alleged facts render plausible that Invidi associates devices based on their connection to a common local area network. And much of the cited facts suggest otherwise. The Court should dismiss the First Amended Complaint under Rule 12(b)(6).

For limitation 1(b), Intent IQ's original complaint relied on two privacy policies. The first was a privacy policy of a ***Swedish affiliate*** concerning its potential activities in Europe. The second was the privacy policy of Invidi Technologies Corporation (the defendant) concerning ***its website***, not the accused product. The Court dismissed the complaint (with leave to replead) because the structure of the accused system could not plausibly be inferred from either privacy policy—neither policy purported to describe the accused system.

Rather than drop the case, Intent IQ again improperly relies on the Swedish privacy policy. It is no more relevant now than it was in August. Intent IQ also relies on a ***third-party*** blog post by LiveIntent concerning ***third-party*** systems. Like the Swedish privacy policy, the third-party blog post cannot plausibly lead to an inference concerning the operation of Invidi's system.

Intent IQ also cites to a variety of webpages from Invidi's website that say nothing more than that Invidi provides targeted advertising to households having multiple devices, which is

something Invidi has done for years prior to Intent IQ's invention date. Such facts are insufficient to raise a plausible inference that Invidi performs limitation 1(b). One can target multiple devices in a household without "recognizing that each of the first and second devices was connected, independently of the other, to a common local area network."

This is Intent IQ's second attempt to plead a case for infringement, and Intent IQ has failed for a second time. Invidi should not be burdened with the cost of litigating Intent IQ's meritless and unsupported allegations. Intent IQ should not be permitted "to engage in a costly fishing expedition to determine whether [it] has a case. Rather, the price of entry into the discovery phase of a case is a proper complaint with sufficient detail to establish that a plaintiff, indeed, has a case." *Maimon v. United States*, 175 Fed. Cl. 553, 563 (2025).

## II. NATURE AND STAGE OF THE PROCEEDINGS

Intent IQ filed this action on July 1, 2025. D.I. 1. The original complaint rested on vague references to Invidi's "computer systems" implementing addressable advertising solutions—something Invidi had been doing for years before Intent IQ filed for its patent. That complaint identified no facts that plausibly tie the accused systems to the asserted claims.

Invidi moved to dismiss, and the Court granted that motion on August 10, 2026 (*see* Minute Entry for motion hearing on that day).

Intent IQ then filed a First Amended Complaint on August 25, 2026 (mistitled as a "First Complaint"). D.I. 141. The body of the complaint is in substance identical to the original complaint, and only the Exhibit 2 claim chart is changed. The claim chart still identifies no facts that plausibly tie the accused systems to the asserted claims. Invidi now moves to dismiss the First Amended Complaint.

## III. SUMMARY OF THE ARGUMENT

1. The First Amended Complaint, like the original, pleads no fact plausibly suggesting that Invidi performs the "recognizing" step of limitation 1(b)—the very limitation the Court found deficient at the August 10 hearing. The cited facts show only that Invidi provides household targeted advertising to multiple devices, and that does not make infringement plausible.

2. The Court has already found that the ***Swedish affiliate's*** privacy policy is insufficient to support limitation 1(b), and yet Intent IQ continues to rely on it. The European privacy policy does not become more relevant with repetition.

3. The two entries from Invidi's online glossary point away from infringement. The "household classification" entry, Intent IQ's lead source this round, does not mention device associations or local area networks. It describes assigning user attributes to devices rather than associating devices based on network connections. The "Ad Decision Engine" entry likewise points away from infringement, and describes assigning user characteristics to a set-top box.

4. The blog post from LiveIntent, an ***unrelated third-party defendant*** is no better than the foreign privacy policy. The LiveIntent blog post does not discuss Invidi's system, and Intent IQ does not allege that it does. Nor could Intent IQ make that allegation consistent with Rule 11.

5. The Invidi webpages next cited by Intent IQ say only that Invidi provides targeted advertising to households with multiple devices. None suggest or make plausible the requirement of limitation 1(b): a computer system associating two devices based on the recognition that they had been connected to a common local area network.

6. Intent IQ has twice failed to plausibly plead infringement. The Court should impose reasonable conditions on the grant of leave to file a second amended complaint.

## IV. LEGAL STANDARDS

### A. Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Threadbare recitals of the elements of a cause of action, supported only by conclusory statements, are not enough. *Id.; Twombly*, 550 U.S. at 555. Rather, the plaintiff must plead "factual content" that allows the Court to draw a reasonable inference of liability. *Iqbal*, 556 U.S. at 678. The factual allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

A complaint for patent infringement must allege facts that make it plausible to infer that an accused product meets each limitation of an asserted claim. Parroting claim language is insufficient. *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1353 (Fed. Cir. 2021). A "plaintiff cannot assert a plausible claim for infringement under the *Iqbal/Twombly* standard by reciting the claim elements and merely concluding that the accused product has those elements. There must be some factual allegations that, when taken as true, articulate why it is plausible that the accused product infringes the patent claim." *Id.* at 1353.

## V. ARGUMENT

### A. The Amended Claim Chart Pleads No Fact Suggesting That Invidi Performs The "Recognizing" Step of Limitation 1(b)

Every factual citation in Exhibit 2 to the First Amended Complaint fails for the same reason: none, alone or together, suggests that Invidi associates two devices by "recognizing that

each of the first and second devices was connected, independently of the other, to a common local area network." '398 patent, claim 1, limitation 1(b).

Using the local area network to identify related devices is the crux of the alleged invention, as conceded by counsel for Intent IQ at the August 10 motion hearing. There, counsel for Intent IQ told the Court: "[A] separate computer system outside that local area network recognizes that those two devices were within the same local area network. And on that basis, it can use profile information of device A to target content or cause any action with respect to device B. And this is something that over repeated invalidity challenges, no one has been able to show that this has been done in the art before." Ex. A (2026-08-10 Hearing Transcript), 31:23-32:4. This discussion in the context of independent claim 13 applies equally to claim 1.

Targeted advertising does not require that "recognizing," or any association between devices at all. Each device within a household, for example, may be treated independently and receive its own user profile. Where a system associates devices, there are many ways to do it, and the patent claims only one. One non-infringing association would be a manual association: An employee could assign two devices to the same household or account. Or a cable television provider could provide a list of all devices on a user's account and the system might make an association based on that listing. Neither approach infringes the '398 patent because neither creates an association based on recognizing that two devices had been connected to the same local area network.

None of the factual allegations in the First Amended Complaint suggest (or allow a plausible inference) that Invidi provides targeted advertising in the claimed manner.

### 1. <u>**The Court has already rejected Intent IQ's reliance on the Swedish privacy policy**</u>

This Court's August 10 ruling disposes of the Swedish privacy policy. That policy describes data that a Swedish affiliate reserves the right to collect in Europe in connection with a system operated in Europe. The policy says nothing about how the accused system operates.

The policy does not even purport to describe the operation of the European system—it is just a privacy policy. Whatever one might infer about the Swedish affiliate's system from the privacy policy (a questionable inference), that inference cannot extend to Invidi's operations. The Court agreed when it dismissed the original complaint:

> So I am going to grant this motion.... [H]ere, there is not really a dispute that all that's alleged is that a foreign privacy policy, a privacy policy for a foreign company who is not the Defendant here has some language that maybe arguably suggests that element 1(b) is met. And then a policy that doesn't talk about the accused products in the United States, it's just a policy for use of Invidi's website in general. I don't think any of that is sufficient to establish a plausible allegation of infringement.

Ex. A, 51:23-52:8. Accordingly, Intent IQ's continued reliance on the Swedish privacy policy should be rejected again.

### 2. <u>**Invidi's "household classification" definition says nothing about a computer system recognizing connections to a common local area network**</u>

Intent IQ's lead factual allegation for limitation 1(b) does not support infringement. It is the definition of "household classification" from Invidi's online "advertising glossary." D.I. 141-1 at 41-42 (pages 5-6 of the claim chart). Intent IQ relies on the following sentence: "Dynamic properties are updated by the STB application as it determines viewership and probable household classification." This sentence fails for three independent reasons:

***First***, the sentence has nothing to do with the claim limitation. It does not mention a local area network. It does not mention associating devices. It does not mention determining

that two devices are on the same network. No inference supporting infringement may be drawn by this statement.

***Second***, the sentence refers to ***the wrong system component***. It describes a determination made ***by the set top box (STB)***: "Dynamic properties are updated ***by the STB application*** as ***it determines*** viewership and probable household classification." D.I. 141-1 at 41 (page 5 of the claim chart) (emphasis added). But the set-top box would be one of the claimed "first and second devices," not the "computer system" residing off the local area network that must do the claimed "recognizing." So, even if the sentence concerned local area network identification (it doesn't), it could not suggest infringement because the "recognizing" happens in the wrong place (on the set-top box rather than ***away from it as claimed*** in limitation 1(b): "wherein the computer system . . . is not in the local area network").[1]

***Third***, the "household classification" entry is the opposite of what is claimed. According to the entry, the set-top box (STB) determines its own probable classification (user profile) whereas the claim requires a computer system to use a profile of a first device to take action on a second device (rather than use the ***second device's own profile***) based on the devices having been connected to a common local area network. The "household classification" entry cannot support Intent IQ's infringement allegations.

### 3. <u>Invidi's definition of "Ad Decision Engine" points away from infringement because it targets ads using characteristics assigned to a set-top box</u>

Intent IQ next cites to Invidi's definition of "Ad Decision Engine (ADE)," but this definition cuts against infringement. As Intent IQ's claim chart acknowledges, the "Ad Decision Engine" delivers advertisements based in part on the "Household characteristics assigned to the

---

[1] Although unnecessary to grant Invidi's motion, it should be noted that Invidi does not, in any event, use dynamic household classification in the accused system.

STB." D.I. 141-1 at 42 (claim chart page 6). This statement describes assigning characteristics to a set-top box and sending ads based on those characteristics, rather than relying on one device's association with another device, which is what the claim requires.

Like the "household classification" glossary entry, this definition never mentions a local area network, and does not suggest any association among devices based on the recognition that each device had been connected to a common local area network. Like the "household classification" glossary entry, this entry suggests non-infringement—set-top boxes are ***assigned*** a household classification based on user characteristics, and not based on the local area network(s) to which they are (or were) connected.

**4. <u>The LiveIntent blog post, written by an unrelated third-party about an unrelated system, says nothing about how Invidi's system works</u>**

Finding nothing helpful on Invidi's website, in Invidi publications, or in Invidi's patents and published patent applications, Intent IQ turns to a blog post by an unrelated third party, LiveIntent. This blog post cannot show how Invidi's system works for three reasons:

***First***, Invidi has no connection to LiveIntent and has no connection with the author of the blog post, who is apparently a Senior Product Marketing Manager at LiveIntent, and Intent IQ makes no allegation that Invidi and LiveIntent are affiliated. Ex. B at 1. The undated blog post is entitled "What's an identity graph?" and discusses "identity graphs" used in connection with web-based marketing. The author explains that "[a]n identity graph is an online database that stores all identifiers tied to individual customers and prospects" and that "[s]olutions like identity graphs will play a vital role in building relationships between businesses and consumers well beyond third-party cookie deprecation." *Id.* at 1-2. However, Intent IQ does not suggest any connection between Invidi and LiveIntent nor does it suggest that Invidi uses "identity graphs" in the accused system (it doesn't).

***Second***, the blog post's "probabilistic matching" passage shares a root word ("probable") with Invidi's glossary, but nothing more. The blog post discusses LiveIntent tools, not Invidi's accused system. The post explains that, in the context of LiveIntent's web-based system, "[p]robabilistic matching pulls identifiers, like device IDs and IP addresses, and signals such as timestamp and geolocation, and compares them using predictive algorithms to find probable matches within an identity graph." *Id.* at 5. Even assuming this statement accurately describes LiveIntent's web-based system in the context of building identity graphs, it says nothing about Invidi's system. Nothing in the blog post plausibly suggests that Invidi uses probabilistic matching using IP addresses in the context of identity graphs or otherwise.

Intent IQ asks this Court to draw a baseless connection between Invidi's use of the phrase "probable household classification" (in the context of user characteristics: for example, is this person a dog owner?) and LiveIntent's "probabilistic matching" (in the context of an "identity graph"). A shared root word across unrelated documents from unrelated companies does not rise to a plausible allegation of infringement. Intent IQ's attempt to use a third-party description of a third-party system to prop up its complaint should be rejected.

***Third***, the blog post's only example involves a retailer's website, app, and store, and nothing in it describes Invidi or an addressable set-top-box system. The example confirms its focus on web sites and web browsers: "Ana, a customer of Sewn's, visits the company's website and looks through women's jackets, boots, gloves, and scarves.... An identity graph can help attach Ana's anonymous or non-logged-in website activity to her customer profile." Ex B at 4. The Court has already rejected Intent IQ's attempt to rely on the privacy policy associated with Invidi's website rather than the accused product. The Court should likewise reject Intent IQ's

attempt to rely on LiveIntent's blog post about activities concerning corporate websites and web browsers unrelated to Invidi's accused product.

5. **<u>The Invidi webpages say that Invidi can reach multiple devices in a household—not that it associates devices by recognizing that they had been connected to the same local area network</u>**

Intent IQ closes its limitation 1(b) analysis with pages from Invidi's website that say only that Invidi provides targeted advertising to households with multiple devices. Intent IQ's original complaint cited some of these pages for other limitations, but not for limitation 1(b), and for good reason: none plausibly suggest that Invidi associates two devices based on recognizing that they each had connected to a common local area network.

Intent IQ first relies on a graphic describing Invidi Pulse:



D.I.141-1 at 46 (claim chart page 10). At most, this graphic suggests that multiple devices may be on the same "Ad Delivery Platform" which could be an "IP/Broadband" platform. Nothing in the graphic makes it plausible that Invidi associates two devices by recognizing that they had each been connected to a common local area network, or that limitation 1(b) is (or might plausibly be) practiced.

Intent IQ next quotes from invidi.com, stating that Invidi's system "enable[s] household-level targeting via the set-top box and other addressable-enabled devices." D.I. 141-1 at 47 (claim chart page 11). There is no mention of device association or local area networks. The next is from www.invidi.com/addressable-advertising/advertiser-benefits, which explains that users can "[t]rack viewer interactions and connect data sources to close the loop on customer activities and drive true marketer outcomes" and that one can "[m]onitor effectiveness across platforms and create complementary messaging for specific devices to drive engagement." *Id.* Again, there is no mention of device association or local area networks.

Intent IQ's next citation cuts ***against*** Intent IQ's allegations of infringement. Intent IQ quotes invidi.com/our-solutions-old/data-driven for the proposition that multiple devices are associated based on "third-party data" (rather than associated based on connection to a common local area network). *Id.* at 48 (claim chart page 12).

The remaining three citations are similar to the first. Intent IQ quotes www.invidi.com/our-solutions/invidi-conexus/ for offering "programmers a way to seamlessly deliver addressable advertising across a broad range of premium video distributor footprints." *Id.* And cites www.invidi.com/our-solutions/invidi-edge for the proposition that "Edge also allows the same campaign to reach numerous devices, such as TV, Mobile, and Desktop within the same household." *Id.* at 49 (claim chart page 13). Finally, Intent IQ cites a post on LinkedIn.

The purported relevance of the LinkedIn passage, according to Intent IQ, is that it demonstrates "that INVIDI 'target[s] households,' including across 'devices.'" *Id.* at 50 (claim chart page 14). Again, there is no mention of "recognizing" that devices were connected to a common network.

In sum, none of the references, alone or together, provide the slightest hint that Invidi associates devices based on their connection to a common local area network (something it does not do). Intent IQ's allegations rest on speculation, and not plausible facts.

### B. The Court Should Place Conditions On the Grant of Any Subsequent Motion For Leave

Intent IQ has already amended its complaint once, and it failed to cure the defect in the original complaint identified by the Court. Intent IQ may no longer amend as of right. A party may amend once. After that, it "may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). In general, leave should be "freely give[n] when justice so requires," but this standard is not limitless. *Id.* Leave may be denied for "repeated failure to cure deficiencies by amendments previously allowed." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Here, Intent IQ has twice failed to allege facts that if true would support an allegation of infringement. No fact suggests that Invidi's system associates devices based on recognizing that they were connected to the same network, and the evidence Intent IQ has presented to this Court suggests otherwise. To avoid further unnecessary burden on Invidi and the Court, Invidi requests that this Court place conditions on further amendment and provide Intent IQ with a "clear indication" that any further failure to properly identify facts regarding limitation 1(b) will result in a dismissal with prejudice. *Santoro v. Tower Health*, No. 24-3173, slip op. at 13-14 (3d Cir. Aug. 28, 2026). (affirming dismissal with prejudice where the plaintiffs had already amended twice and the district court provided a 'clear indication' of the deficiency).

## VI. CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court dismiss Intent IQ's First Amended Complaint without prejudice and order that any motion for leave to file a Second Amended Complaint must identify the specific factual allegations, and the sources supporting them, that establish the plausibility that the accused Invidi system associates devices based on recognizing their independent connection to a common local area network, as limitation 1(b) requires.

DATED: October 6, 2026

Respectfully submitted,

FISH & RICHARDSON P.C.

*/s/ Warren K. Mabey, Jr.*

Warren K. Mabey, Jr. (#5775)
222 Delaware Avenue, 17th Floor
Wilmington, DE 19801
Telephone: (302) 652-5070
E-mail: mabey@fr.com

Steven R. Katz
FISH & RICHARDSON P.C.
One Marina Park Drive
Boston, MA 02210
Telephone: (617) 532-5070
katz@fr.com

Attorneys for Defendant
Invidi Technologies Corporation